**UNITED STATES of America**

v.

**Aedan Charles McCARTHY, Defendant.**

**Crim. A. No. 64–CR–302.**

United States District Court
E. D. New York.

Jan. 11, 1966.

Joseph P. Hoey, U. S. Atty., for Eastern Dist. of N. Y. by Lewis L. Douglass, Asst. U. S. Atty., for the United States.

Howard A. Jacobs and Ira Grudberg, New Haven, Conn., for defendant.

MISHLER, District Judge.

Defendant moves to suppress evidence [Rule 41(e)] on the ground that such evidence was obtained in violation of defendant's rights under the Fourth and Fifth Amendments, and to dismiss the indictment "on the grounds that all the evidence * * * was obtained as a result of, and pursuant to, an illegal attempt to arrest the defendant. * * *" (Defendant's notice of motion).

Defendant is charged in this two-count indictment with assault on a Special Agent of the F.B.I. [18 U.S.C. § 111], and an attempt to escape from custody of F.B.I. Agents, after having been placed under lawful arrest [18 U.S.C. § 751] pursuant to the unlawful flight statute [18 U.S.C. § 1073].

The relief available under Rule 41(e) is " * * * for the return of the property and to suppress for the use as evidence * * *" anything obtained as a result of an unlawful search and sei-

zure. There is no claim of an unlawful search or a seizure of property; nor is there a claim that any evidence, in the hands of the prosecutor, flowed from an unlawful search or seizure. In defendant's brief (p. 6) he urges in the caption of point III of his argument that "evidence of any alleged scuffle at the time of the unlawful arrest must be suppressed." The concept is without support in law or logic. A confession made while under illegal arrest does not, ipso facto, render the confession inadmissible. Wong Sun v. United States, 1963, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441; Brinegar v. United States, 1949, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879. Certainly, then, are voluntary acts, while under unlawful arrest, subject to proof.

The motion to dismiss both counts in the indictment is based on the claimed illegality of the arrest. The first attack on the arrest is directed to the sufficiency of the complaint upon which the warrant of arrest was issued.

■ The complaint made by F.B.I. Agent Maceys and upon which the Commissioner issued a warrant of arrest stated only that it was "based on information obtained by investigators of the New Haven Office, F.B.I." Rule 4(a) of the Rules of Criminal Procedure provides in part:

> "If it appears from the complaint that there is probable cause to believe that an offense has been committed and that the defendant has committed it, a warrant for the arrest of the defendant shall issue to any officer authorized by law to execute it."

In Giordenello v. United States, 1958, 357 U.S. 480, 486, 78 S.Ct. 1245, 1250, 2 L.Ed.2d 1503,[1] the Court said the Commissioner "should not accept without question the complainant's mere conclu-sion that the person whose arrest is sought has committed a crime." The complaint in Giordenello did not provide "any basis * * * under Rule 4 that probable cause existed." See also Aguilar v. State of Texas, 1964, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723. While "[t]echnical requirements of elaborate specificity * * * have no proper place in this area," United States v. Ventresca, 1965, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684, the complaint must, nevertheless, comply with Rule 4(a) in showing a basis for the Commissioner's determination of probable cause. The complaint in the instant case was insufficient and the warrant issued thereon invalid.

■ The arrest, however, was lawful if probable cause is shown. Giordenello v. United States, supra; Di Bella v. United States, 1960, 2d Cir., 284 F.2d 897, order vacated on other grounds, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614.

■ A person in custody under lawful arrest is required to submit to the arresting authority, while one under unlawful arrest may resist. United States v. Di Re, 1948, 332 U.S. 581, 594, 68 S.Ct. 222, 228, 92 L.Ed. 210; Foster v. United States, 1962, 5th Cir., 296 F.2d 65, 67.

■ Resistance, and the use of force or violence against the assailants, even though they are police officers, is privileged if such force or violence is not more than sufficient to prevent the commission of an offense against the person. People v. Dreares, 1961, 1st Dep't, 15 App.Div.2d 204, 221 N.Y.S.2d 819, aff'd mem., 1962, 11 N.Y.2d 906, 228 N.Y.S.2d 467, 182 N.E.2d 812; People v. Pitcher, 1959, 4th Dep't, 9 App.Div.2d 1016, 194 N.Y.S.2d 337 (per curiam). Whether such force or resistance is "not more than sufficient" is to be judged in "terms of the physical necessities of the situation." People v. Cherry, 1954, 307 N.Y. 308, 121

---

1. The complaint stated:
    " * * * [t]hat on or about January 26, 1956, at Houston, Texas, in the Southern District of Texas, Veto Giordenello did receive, conceal, etc., narcotic drugs, to wit, heroin hydrochloride with knowledge of unlawful importation; in violation of Section 174, Title 21, United States Code."

N.E.2d 238. Thus, a victim may not pursue his counter-attack merely for the sake of revenge. Ibid. The counter-attack should occur in close sequence to the unlawful arrest and as part of the resistance to such. People v. McNeil, 1965, 15 N.Y.2d 717, 256 N.Y.S.2d 614, 204 N.E.2d 648; People v. Allen, 1964, 15 N.Y.2d 558, 254 N.Y.S.2d 369, 202 N.E.2d 911 (mem).

The right to exert sufficient force to resist an unlawful arrest is a matter of defense to the first count. Thus, the lawfulness of the arrest is a fact question, resting on the presence or absence of probable cause, to be submitted to the jury. The issue is presented differently in the framework of the second count. One of the essential elements of the crime charged under 18 U.S.C. § 751[2] is that the custody of the defendant was "pursuant to lawful arrest. * * *"

The arrest was made under 18 U.S.C. § 1073. That section provides:

"Violations of this section may be prosecuted * * * only upon formal approval in writing by the Attorney General or an Assistant Attorney General of the United States, which function of approving prosecutions may not be delegated."

The Government concedes that no approval of prosecution was given by the Attorney General or an Assistant Attorney General. Defendant postulates the illegality of the arrest on this failure. The claim is based on the premise that the prosecution was commenced at the time of the issuance of the warrant. The defendant points out that the warrant was a court document issued out of the United States District Court for the District of Connecticut.

The field is barren of decisional law on the point raised. The Court of Appeals of this Circuit in United States v.

Bando, 1957, 244 F.2d 833, cert. denied, 355 U.S. 844, 78 S.Ct. 67, 2 L.Ed.2d 53, interpreted the phrase "avoid prosecution" as used in § 1073.[3] Defendant there argued that no offense was proved, because, at the time of flight, the state had not formally instituted prosecution "as by the filing of a charge or indictment." The Court answered the argument as follows:

"An analysis of Sec. 1073 does not support any such narrow and strained construction. The words 'to avoid prosecution' mean 'to avoid being prosecuted.' The statute does not say 'to avoid a *pending* prosecution.' * * * It is sufficient if the fleeing felon is 'subject to prosecution.'" (Id. 244 F.2d at 843).

Cited with approval in Lupino v. United States, 1959, 8th Cir., 268 F.2d 799, 800–801, cert. denied, 361 U.S. 834, 80 S.Ct. 86, 4 L.Ed.2d 75.

The legislative intent and purpose of section 1073 (Fugitive Felon Act) is discussed in United States v. Bando, supra 244 F.2d at 843, in the following language:

"Sec. 1073 was part of the anti-racketeering legislation passed by the 73d Congress (1934). It was intended to enable federal agencies to go into action against criminals who 'flee from the scene of the crime beyond the jurisdiction of the State wherein the crime is committed and eventually escape punishment entirely.' The construction of Sec. 1073 which appellants offer, would serve in great measure to frustrate the federal law enforcement agencies by preventing them from going into action promptly, and it would set a premium on a quick get-away across State lines by the criminal who committed one of the crimes of violence listed in Sec. 1073."

---

2. 18 U.S.C. § 751(a) reads in part:
  "Whoever escapes or attempts to escape * * * from the custody of an officer or employee of the United States pursuant to lawful arrest * * *."

3. That portion of § 1073 reads in part:
  "Whoever moves or travels in interstate or foreign commerce with intent either (1) to avoid prosecution * * *."

The effectiveness of the statute would be lost and the purpose of the statute defeated if the available federal agencies looked helplessly on, awaiting formal authority from the Attorney General or his Assistant, while the fugitive felon moved on.

The 1961 amendment to § 1073 added the requirement of written formal approval for prosecutions under the section. No express reason is given for the addition in the House Report [4] under the heading of "Purpose of the Legislation" [5] and "General Statement".[6] It is clear that the amendment was intended to aid local law enforcement agencies apprehend fugitive felons through federal agencies and return them to the State jurisdiction for prosecution there. Implicit in the language of the report is the intention that federal prosecution for the offense was of secondary consideration. The choice of federal prosecution was therefore withdrawn from the United States District Attorney and lodged with the Attorney General. The 1961 amendment did not diminish the power of the federal government to return the fugitive felon for state prosecution.

Approval of prosecution by the Attorney General may be necessary prior to the presentation of evidence before the Grand Jury. Nothing in the language of the section requires a holding that such written approval be given prior to the issuance of a warrant of arrest or prior to arrest without a warrant.

Defendant argues that a prosecution starts with the filing of a complaint and the issuance of a warrant thereon. Defendant alludes to Rule 48(a) of the Rules of Criminal Procedure which states, that the prosecution shall terminate upon dismissal of an indictment, information and *complaint*. The word 'prosecution' conveys a different meaning in the rule than in the statute under consideration. The comment of the Advisory Committee is significant here.[7]

Similarly, the quote from United States v. Scully, 1954, 119 F.Supp. 225, 227 (S.D.N.Y.) does not aid the definition of the word as used in the statute. There, the focus was on the time a witness before the Grand Jury should be warned of his Fifth Amendment right against self-incrimination. Judge Medina's language in the affirming opin-

---

4. H.R.Doc.No.827, 87th Cong., 1st Sess. (1961), U.S. Code Congressional and Administrative News 1961, p. 3242.

5. It stated in part as the purpose:
   " * * * to broaden the scope of existing law in order that a number of serious crimes not presently included within the statute will be included in order to assist local law enforcement agencies in the apprehension of fugitives through the services of the Federal Government."

6. " * * * this amendment will strengthen the law enforcement, both State and Federal, against major criminal activities. It will supplement the powers of the States in criminal law enforcement through the assistance of the agents of the Federal Government's investigative forces. It will provide either for Federal trials of the persons apprehended or their return to the proper State jurisdiction for prosecution or other appropriate State action."

Note also that for the purpose of tolling the limitation of time, 18 U.S.C. § 3282 fixes the date "the indictment is found or the information is instituted." The date the indictment is returned or information filed would appear to be the time of commencement of prosecution in computing time for a defense of Statute of Limitations.

7. "The word 'complaint' was included in order to resolve a doubt prevailing in some districts as to whether the United States attorney may file a *nolle prosequi* between the time the defendant is bound over by the United States commissioner and the finding of an indictment. It has been assumed in a few districts that the power does not exist and that the United States attorney must await action of the grand jury, even if he deems it proper to dismiss the prosecution. This situation is an unnecessary hardship to some defendants."

ion, (225 F.2d 113, cert. denied, 350 U. S. 897, 76 S.Ct. 156, 100 L.Ed. 788) more accurately states the principle involved. He said:

" * * * In other words, it has been held by various District Judges in this Circuit that until a formal charge is openly made against the accused, either by indictment presented or information filed in court or by complaint before a magistrate, there is no violation of constitutional right by eliciting testimony from a person called before a Grand Jury and not previously warned or advised that he has a constitutional right to refuse to answer questions, the answers to which may incriminate him." (Id. 225 F.2d at 114–115).

In construing a statute the purpose of the statute is of vital importance. The general purpose is a more important aid to the meaning, than any rule which grammar or formal logic may lay down. United States v. Shirey, 1959, 359 U.S. 255, 260–261, 79 S.Ct. 746, 749, 3 L.Ed. 2d 789; see Rathbun v. United States, 1957, 355 U.S. 107, 109, 78 S.Ct. 161, 163, 2 L.Ed.2d 134, rehearing denied, 1958, 355 U.S. 925, 78 S.Ct. 363, 2 L.Ed.2d 355; United States v. American Trucking Ass'n, 1940, 310 U.S. 534, 541–542, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345; Monarch Life Ins. Co. v. Loyal Protective Life Ins. Co., 1963, 2d Cir., 326 F.2d 841, cert. denied, 1964, 376 U.S. 952, 84 S.Ct. 968, 11 L.Ed.2d 971. In Sherman v. Hamilton, 1961, 1st Cir., 295 F.2d 516, cert. denied, 1962, 369 U.S. 820, 82 S.Ct. 827, 7 L.Ed.2d 785, the Court observed,

" * * * it is not unusual for the same word to have differing connotations in the same act and surely no canon of statutory construction forecloses courts from attributing to the word the meaning which the legislature intended that it should have in each instance."

The formal approval of the Attorney General or the Assistant Attorney General does not require such approval to make an arrest under § 1073. Thus, the failure to obtain written approval did not invalidate the arrest. As previously indicated, the question of probable cause, in which the issue of the lawfulness of the arrest is inextricably bound, is a fact question for the jury.

The motion is in all respects denied.

Settle order on two (2) days notice.