**UNITED STATES of America**

v.

**Daniel Melendez DIAZ.**
**Magistrate's No. 3.**

**No. 215.**

United States District Court,
D. Connecticut.

Aug. 30, 1972.

Randolph C. Roeder, Asst. U. S. Atty., Hartford, Conn., for plaintiff.

## MEMORANDUM OF DECISION ON ISSUANCE OF ARREST WARRANT

NEWMAN, District Judge.

The Government has presented an application for issuance of an arrest warrant in order to secure a judicial ruling within this District as to whether a warrant may issue for a violation of 18 U.S.C. § 1073 (unlawful flight to avoid prosecution) in the absence of the written approval of the Attorney General of the United States or an Assistant Attorney General. On July 25, 1972, a sworn complaint charging Daniel Diaz with a violation of § 1073 was presented before United States Magistrate Thomas F. Parker. The complaint alleged that Diaz, while held in state custody for prosecution on a charge of selling narcotics, escaped on May 18 and was arrested in New York City on June 4. Magistrate Parker declined to issue a warrant, expressing his view in a brief memorandum that § 1073 requires the written approval of the Attorney General or an Assistant Attorney General before a warrant may issue.

■ The Government styles its application a Motion for Rehearing, which it says is based on Rule 5 of the Federal Rules of Procedure for the Trial of Minor Offenses before United States Magistrates. That rule provides for the rehearing of any decision of a magistrate, which if made by a judge of the district court, could be appealed. But there is no authority to appeal the decision of a district judge denying a request to issue a warrant. However, there is no reason this Court cannot act upon the application as an original matter, despite its prior presentation to a magistrate. The Court's jurisdiction is clear, 18 U.S.C. § 3041, and while successive requests to issue a warrant after an initial refusal should normally be discouraged, it is entirely appropriate to entertain the application here where the question is not the sufficiency of the facts to establish probable cause but rather the proper construction of a statute which has not been adjudicated in this District.

■ The issue arises from the last paragraph of § 1073 which specifies that violations of the section may be "prosecuted" only upon the formal written approval of the Attorney General or an Assistant Attorney General. The Magistrate construed "prosecution" to mean every step of the criminal process including the issuance of an arrest warrant. The Government contends that in this statute the word means all steps after the initiation of a court proceeding by indictment or information.

The paragraph in question was added to the Fugitive Felon Act in 1961 when the Act was broadened to include those who flee across state lines to avoid prosecution or confinement not merely for a list of enumerated crimes but for all felonies. The paragraph was added as an amendment offered by Congressman Libonati and adopted without discussion. 107 Cong.Rec. 15767 (Daily ed. Aug. 23, 1961). Earlier in the debate, however, the Congressman plainly set forth the purpose of his amendment (107 Cong.Rec. 15765):

> I would say further that that was the purpose of the original bill, purely for the apprehension of felons who have flown from a jurisdiction and it is the desire of the demanding State authorities to return him. That is the only function that they [referring to the FBI] measure up to in this bill except where the Attorney General in such case may determine, as by the amendment that I propose, to prosecute under the Federal law of flight—he or members of his staff, and no one else.

Congressman Libonati understood that the role of the Federal Bureau of In-

vestigation was limited to aiding in the apprehension of a fugitive. He wanted to make clear that if there was to be any *further* federal law enforcement activity after apprehension, such would require the approval of senior Department of Justice officials. The amendment made explicit the informal policy of the Department which was explained to the House during the debate. Under this policy the authorization to seek a warrant required the approval only of the local United States Attorney. However, the decision as to whether an indictment would be sought required the approval of the Attorney General. 107 Cong.Rec. 15758. The entire debate reflects a thorough Congressional understanding of a difference between the terms "apprehension" and "prosecution," with only the latter requiring Departmental approval. For example, Congressman Willis explained to the House, "of all the apprehensions made under present law very few have ripened into prosecutions under the Federal statute." 107 Cong.Rec. 15756.

Whatever the scope of the word "prosecute" in other statutes or rules, it is clear that in the last sentence of § 1073 it refers to the formal initiation of a criminal case by indictment or information and perhaps the preliminary step of a removal proceeding, but not to the issuance or execution of an arrest warrant which accomplishes the apprehension of the defendant. United States v. McCarthy, 249 F.Supp. 199 (E.D.N.Y.1966). It may well be that this construction gives the word "prosecute" a different meaning in the last sentence of § 1073, concerning approval of Department of Justice officials, than the word has in the first sentence of the same statute, where flight from prosecution is specified as part of the offense. Such a result is certainly anomalous, but since the legislative history makes it clear that the two different meanings of the same word were intended, it is not for this Court to ignore that intention in preference for consistency of phrasing.

Accordingly, the warrant applied for will be issued.